IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE A. TRUJILLO, JR.,

    Plaintiff,

vs.                                                                                     1:21-cv-00774-LF

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Jose A. Trujillo's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 15), which was fully briefed on April 11, 2022. *See* Docs. 19, 20, 21. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred because his reasons for discounting Dr. Mash's opinion are not supported by substantial evidence. I therefore GRANT Mr. Trujillo's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Mr. Trujillo was born in 1972, completed high school, and has worked as a security guard, a cashier, and a stock clerk. AR 31, 217, 233, 249.[3] He filed an application for Supplemental Security Income ("SSI") on May 27, 2020,[4] alleging disability since February 1, 2019, due to head trauma, bipolar disorder, post-traumatic stress disorder ("PTSD"), sleep

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[4] Mr. Trujillo previously filed applications for Disability Insurance Benefits and Supplemental Security Income on February 5, 2015, that were denied by the ALJ on April 4, 2018, and denied by the Appeals' Council on January 31, 2019. AR 79–105, 228. This appeal does not involve those applications.

disorder, major depression, memory loss, anxiety, social phobia, headaches, spondylosis, degenerative joint disorder in both hips, knee problems, and diabetes.  AR 217–20, 232.  The Social Security Administration ("SSA") denied his claim initially on June 19, 2019.  AR 135–38.  The SSA denied his claim on reconsideration on November 7, 2019.  AR 145–49.  Mr. Trujillo requested a hearing before an ALJ.  AR 152–54.  On November 10, 2020, ALJ Stephen Gontis held a telephonic hearing.  AR 40–72.  ALJ Gontis issued an unfavorable decision on December 9, 2020.  AR 14–39.

At step one, the ALJ found that Mr. Trujillo had not engaged in substantial, gainful activity since May 27, 2020,[5] his application date.  AR 19.  At step two, the ALJ found that Mr. Trujillo suffered from the following severe impairments:  obesity, lumbar degenerative disc disease, bilateral hip and knee degenerative joint disease, neuropathy in his arms, bipolar disorder with depression, anxiety, and PTSD.  AR 20.  The ALJ found that Mr. Trujillo's other medically determinable impairments—ankle dysfunction, prior head trauma, diabetes mellitus, and obstructive sleep apnea—were nonsevere.  *Id*.  At step three, the ALJ found that none of Mr. Trujillo's impairments, alone or in combination, met or medically equaled a Listing.  AR 21–24.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Trujillo's RFC.  AR 24–31.  The ALJ found Mr. Trujillo had the RFC to

> perform light work as defined in 20 CFR 416.967(b) except for the following:  the claimant would be limited to lifting 20lbs occasionally and 10lbs frequently, and carrying 20lbs occasionally and 10lbs frequently.  He can sit for 6 hours in an 8-hour workday.  He can stand or walk for 4 hours during an 8-hour workday.  He can push/pull as much as he can lift/carry.
>
> The claimant can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance occasionally, stoop occasionally, kneel

---

[5] In the ALJ's decision, he notes the application date as March 20, 2019.  AR 19.  The date on Mr. Trujillo's application is May 27, 2020.  AR 217.  The Court presumes that the date noted in the ALJ's decision is a typographical error, and it does not affect the decision of this Court.

4

> occasionally, crouch occasionally, and crawl occasionally.  He can handle items frequently with the left hand, and can handle items frequently with the right hand.
>
> The claimant can perform more than simple, but less than complex, tasks consistent with semi-skilled work.  He can occasionally interact with supervisors, co-workers, and the public.  He can tolerate few changes in a routine work setting.  Furthermore, any time off task . . . can be accommodated by normal breaks.

AR 24–25.

At step four, the ALJ concluded that Mr. Trujillo was unable to perform any of his past relevant work.  AR 31.  The ALJ found Mr. Trujillo not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as small products assembler, coin machine collector, and surveillance system monitor, cutter and paster of press clippings, document preparer, and escort vehicle driver.  AR 32–33.

Mr. Trujillo requested review of the ALJ's unfavorable decision by the Appeals Council.  AR 205–08.  On July 1, 2021, the Appeals Council denied the request for review.  AR 1–7.  Mr. Trujillo timely filed his appeal to this Court on August 18, 2021.[6]  Doc. 1.

### IV.    Mr. Trujillo's Claims

Mr. Trujillo raises four arguments for reversing and remanding this case:  (1) the ALJ erred in evaluating the persuasiveness of Dr. Mash's opinion; (2) the ALJ erred by failing to include a mental function-by-function assessment; (3) the ALJ's step five finding is not supported by substantial evidence because (a) he did not resolve a conflict between the VE's testimony and the DOT, and (b) he failed to conduct and analysis required by *Trimiar*[7] when

---

[6] A claimant has 60 days to file an appeal.  The 60 days begin running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 3.

[7] *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992).

considering the number of jobs available in the national economy; and (4) the ALJ's authority, which stems from the Commissioner's, is unconstitutional under *Seila*.[8] *See* Doc. 15 at 6–23.

For the reasons discussed below, I find that the ALJ's decision to discount Dr. Mash's opinion is not supported by substantial evidence and is based on a mistake of fact. I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V.     Discussion.

Mr. Trujillo argues that the ALJ committed legal error in analyzing the opinions of his treating psychologist, Dr. J.M. Mash. Doc. 15 at 6–14. He argues that the reasons the ALJ gave for finding Dr. Mash's opinions unpersuasive are not valid. *Id.* In response, the Commissioner argues that the ALJ's assessment of the opinion evidence complied with the revised medical evidence regulations. Doc. 19 at 14–19. The Court agrees with Mr. Trujillo that the ALJ erred. Although the ALJ applied the correct legal standards, the reasons he gave for discounting Dr. Mash's opinions are not supported by substantial evidence and are based on a mistake of fact.

Mr. Trujillo filed his application for SSI on May 27, 2020. AR 216–20. Therefore, the significantly revised regulations pertaining to medical opinions and prior administrative medical findings apply to this case. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence which is subject to the same standard of review. *See* 20 C.F.R. § 416.920c ("How we consider and articulate medical opinions . . . for claims filed on or after March 27, 2017.").

---

[8] *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). In his reply, Mr. Trujillo concedes his argument that the ALJ lacked the authority to adjudicate his claim. Doc. 20 at 1. The Court therefore does not address this argument.

Pursuant to the new regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources."  20 C.F.R. § 416.920c(a).

The new regulation sets forth five factors the SSA will consider in evaluating medical opinions:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.
>
> (2) Consistency.  The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.
>
> (3) Relationship with the claimant.  This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.
>
>> (i) Length of the treatment relationship.  The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> (ii) Frequency of examinations.  The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> (iii) Purpose of the treatment relationship.  The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>
>> (iv) Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>
>> (v) Examining relationship.  A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.
>
> (4) Specialization.  The medical opinion . . . of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion . . . of a medical source who is not a specialist in the relevant area of

>specialty.
>
>(5) Other factors.  We will consider other factors that tend to support or contradict a medical opinion . . . .  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.  When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion . . . makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 416.920c(c).

The new SSA regulations impose three "articulation requirements" when an ALJ considers medical opinion evidence.  *See* 20 C.F.R. § 416.920c(b).  First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he or she considered each individual medical opinion; rather, the ALJ "will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis."  20 C.F.R. § 416.920c(b)(1).  Second, while an ALJ must consider five factors when evaluating medical opinion evidence, *see* 20 C.F.R. § 416.920c(c)(1)–(5), the ALJ is generally only required to articulate his or her consideration of two of those factors:  "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision," 20 C.F.R. § 416.920c(b)(2).  Finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions."  20 C.F.R. § 416.920c(b)(3).

The new regulations do not alter the standard of review; ultimately, the relevant question is whether the SSA's decision complies with the regulations and is supported by substantial evidence.  *See Zhu v. Commissioner, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (unpublished) ("The ALJ complied with this regulatory framework and his evaluations

8

of the pertinent medical opinions are supported by substantial evidence."). In addition, the nature of substantial-evidence review has not changed in light of the new regulations. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Nevertheless, the ALJ must discuss not only the evidence supporting his or her decision but also "the uncontroverted evidence he [or she] chooses not to rely upon as well as significantly probative evidence he [or she] rejects." *Id*. Finally, the decision below must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (internal quotation marks omitted).

Dr. Mash treated Mr. Trujillo from January through at least June of 2019.[9] AR 442–53, 590-92. Dr. Mash completed a Mental Residual Functional Capacity Assessment ("MRFCA") on August 30, 2019. AR 552–53. In the MRFCA, Dr. Mash found that Mr. Trujillo had the following moderate and marked limitations:

<u>Understanding and Memory</u>

- Moderate limitation in remembering locations and work-like procedures.
- Moderate limitation in understanding and remembering detailed instructions.

<u>Sustained Concentration and Persistence</u>

- Marked limitation in carrying out detailed instructions.

---

[9] The record includes Dr. Mash's treatment records through June 2019. *See* AR 442–53, 590–92. Other medical records indicate that Dr. Mash continued to treat Mr. Trujillo at least through September 2020, *see, e.g.*, AR 754 (clinical assessment dated 9/30/2020 stating that Mr. Trujillo currently "sees Dr. Mash for medication management, and is scheduled to see him by end of week"), but the record does not contain Dr. Mash's treatment records after June 2019.

9

- Moderate limitation in maintaining attention and concentration for extended periods of time (i.e., 2-hour segments).
- Moderate limitation in performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerance.
- Moderate limitation in sustaining an ordinary routine without special supervision.
- Marked limitation in working in coordination with/or proximity to others without being distracted by them.
- Moderate limitation in making simple work-related decisions.
- Moderate limitation in completing a normal workday and work week without interruptions from psychological based symptoms and performing at a consistent pace without unreasonable number and length of rest periods.

Social Interaction

- Marked limitation in accepting instructions and responding appropriately to criticism from supervisors.
- Moderate limitation getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.

Adaptation

- Moderate limitation in responding appropriately to changes in the work place.
- Moderate limitation in setting realistic goals or making plans independently of others.

AR 552–53.

The ALJ discounted Dr. Mash's opinion for two reasons.  First, he discounted the opinion because Dr. Mash used a check-box form and, in the ALJ's opinion, "did not sufficiently explain how the diagnosis or symptoms would cause the specific limitations."  AR 31.  Second, the ALJ explained that Dr. Mash's opinion was inconsistent because "the longitudinal evidence in the record, which indicated that recent treatment through a psychiatrist with medication was able to assist with managing his symptoms related to his mental impairments."  *Id*.  The ALJ explained that "around the alleged onset date, the claimant reported that his symptoms were improving."  AR 28.  The reasons provided by the ALJ are not supported by substantial evidence and remand is required.

First, the ALJ found Dr. Mash's opinion only partially persuasive because it was made on a check-box form "with limited support." AR 30. " 'Supportability' examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . .the more persuasive the medical opinions . . . will be.' " *Zhu*, 2021 WL 2794533, at *6 (quoting 20 C.F.R. § 416.920c(c)(1)). The ALJ criticized the supportability of Dr. Mash's opinion because, in the ALJ's opinion, Dr. Mash did not include a reasonable level of narrative description that would identify the diagnoses, specific symptoms, and response to treatment that would align with the limitations. AR 30. The ALJ determined that "there was little indication how these diagnoses or symptoms would cause the specific limitations." AR 31. The Commissioner asserts that the ALJ's explanation complies with the regulations. Doc. 19 at 14–15 (citing 20 C.F.R. § 416.920c(c)(1)). The Court disagrees.

In the "Social Interaction" section of the MRFCA, Dr. Mash assessed Mr. Trujillo with a marked limitation in his ability to "[a]ccept instruction and respond appropriately to criticism from supervisors" and a moderate limitation in his ability to "[g]et along with coworkers or peers without distracting them or exhibiting behavioral extremes." AR 553. In the "Comments" section, Dr. Mash explained that his assessment was based on "chronic hypervigilance from PTSD border[ing] on paranoia." *Id*. At the end of the form, Dr. Mash explained generally that Mr. Trujillo "suffers from severe PTSD and Bipolar II hypervigilance/paranoia [which] can lead to explosive rage." *Id*. Although the ALJ complained that Dr. Mash "did not sufficiently explain how the diagnosis or symptoms would cause the specific limitations," Dr. Mash clearly

11

identifies severe PTSD and Bipolar II[10] as the diagnoses that support his conclusions. Further, Dr. Mash explains that these mental disorders cause symptoms, including hypervigilance, paranoia, and "explosive rage." These symptoms certainly explain why Mr. Trujillo would be markedly limited in his ability to work in coordination with/or in proximity to others without being distracted by them and markedly limited in his ability to accept instructions and respond appropriately to criticism from supervisors.

Additionally, the ALJ focuses solely on the explanation provided on the MRFCA form and fails to consider any other objective medical evidence. The Tenth Circuit has explained that medical source opinions on check-box forms are not improper if they are supported by substantial evidence, either on the form itself or elsewhere in the record. *See Anderson v. Astrue*, 319 F. App'x 712, 723-24 (10th Cir. 2009) (unpublished) (reversing the ALJ's decision to discount physicians' check box forms where the physicians also recorded limited clinical comments, and other medical evidence supported the conclusions in the forms); *see also Fierro v. Colvin*, 2014 WL 12791246, at *4 (D.N.M. May 28, 2014) (unpublished) (rejecting the Commissioner's argument that the ALJ could reject a treating physician's opinion merely

---

[10] There are several types of bipolar and related disorders. They may include mania or hypomania and depression. Symptoms can cause unpredictable changes in mood and behavior, resulting in significant distress and difficulty in life. Bipolar I disorder is characterized as having at least one manic episode that may be preceded or followed by hypomanic or major depressive episodes. In some cases, mania may trigger a break from reality (psychosis). Bipolar II disorder is characterized as having at least one major depressive episode and at least one hypomanic episode, but you've never had a manic episode. Bipolar II disorder is not a milder form of bipolar I disorder, but a separate diagnosis. While the manic episodes of bipolar I disorder can be severe and dangerous, individuals with bipolar II disorder can be depressed for longer periods, which can cause significant impairment. *See* Bipolar Disorder, Mayo Clinic, available at https://www.mayoclinic.org/diseases-conditions/bipolar-disorder/symptoms-causes/syc-20355955 (last visited Aug. 18, 2022).

because it was provided on a check-box form, and finding that the opinion was supported by treatment notes, treatment plans, and other documentation).[11]

Dr. Mash treated Mr. Trujillo from January of 2019 through at least June 2019. There is no indication in the ALJ's decision that he considered Dr. Mash's treatment notes or other evidence in the record that supported Dr. Mash's conclusions. For example, in a progress note from January 18, 2019, Dr. Mash stated that Mr. Trujillo suffers from chronic negative ruminations, and he obsesses over perceived slights. AR 444. Dr. Mash also noted that Mr. Trujillo's PTSD resulted in intrusive images and nightmares from being assaulted while he was working as a guard. *Id*. Dr. Mash observed that "[t]he intensity of [Mr. Trujillo's] dark ruminations and the lability[] of his negative affect is consistent with Bipolar II." *Id.* In other words, Dr. Mash's treatment notes provide further explanation as to the diagnoses and symptoms that caused Mr. Trujillo's functional limitations. The ALJ's failure to examine the connection between Dr. Mash's treatment records and his medical opinion is error.

The ALJ's second reason for discounting Dr. Mash's opinion is based on a mistake of fact, and remand is required. The ALJ evaluated Dr. Mash's opinion for consistency. "Consistency compares a medical opinion to the evidence: The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Zhu*, 2021 WL 2794533, at *6 (quoting 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2)) (internal quotations, brackets and ellipses omitted).

---

[11] The recently revised regulations do not change the analysis regarding check-box forms. *See Dawson v. Kijakazi*, No. 20-CV-03022-PAB, 2022 WL 1421257, at *5 (D. Colo. May 5, 2022) (unpublished) (acknowledging that "categorical rejection of check-box forms is not appropriate where 'there were other materials [in the record] that could lend support to the conclusions in the forms.' ") (quoting *Anderson*, 319 F. App'x at 724).

The ALJ's decision to discount the opinion because it was not consistent with the evidence is not supported by substantial evidence and is based on a mistake of fact.

Dr. Mash completed the MRFCA on August 30, 2019. AR 552–53. The ALJ, however, states that Dr. Mash's opinion was made in August of 2018. AR 30. The Court does not presume that the notation of this date is a typographical error because the timing of the opinion is a principal reason the ALJ used to discount Dr. Mash's opinion. The ALJ concluded that "based on the evidence in the record, the undersigned finds that the claimant is not as limited as noted in the opinion that occurred **prior to the relevant period**." AR 31 (emphasis added). The Commissioner compounds the ALJ's mistake by arguing that Dr. Mash's opinion "predated the relevant period." Doc. 19 at 15. Mr. Trujillo's alleged onset date is February 1, 2019. AR 217. Dr. Mash treated Mr. Trujillo from January 18, 2019 (AR 442–45)—a month prior to the alleged onset date—through at least June 7, 2019 (AR 590–92). Dr. Mash completed the MRFCA on August 30, 2019—six months **after** the alleged onset date. AR 552–53.

The ALJ discounted Dr. Mash's opinion as inconsistent with other medical records "which indicated that recent treatment through a psychiatrist with medication was able to assist with managing his symptoms related to his mental impairments." AR 31. The "recent treatment" cited by the ALJ includes records from both before Dr. Mash's opinion and after his opinion. For example, the evidence used by the ALJ included medical records, progress notes, and function reports that are dated prior to Dr. Mash's opinion. *See* AR 31 (citing AR 241 (B3E/2); AR 243–45 (B3E, 4–6); AR 261 (B5E/5); AR 450 (B6F/16); AR 533 (B10F/17); AR 554–98 (B14F) (the ALJ does not specify which of the 45 pages in exhibit B14F support his findings)). Other progress notes and clinical reports the ALJ cites are dated after Dr. Mash's

14

opinion. *See* AR 31 (citing AR 642 (B17F/8); AR 647–48 (B17F/13–14); AR 662 (B18F/3); AR 668 (B18F/9); AR 755 (B21F/4, 8–9)).[12]

The ALJ's mistaken belief that Dr. Mash assessed Mr. Trujillo in August 2018 rather than 2019 resulted in the misunderstanding that Mr. Trujillo was improving around the time of the alleged onset date and months after Dr. Mash's assessment. Instead, the record shows that Mr. Trujillo continued to struggle with his mental health issues well after February 1, 2019. Admittedly, there is some indication that Mr. Trujillo showed some improvement with treatment in the spring of 2019. For example, in March and June 2019, Mr. Trujillo reported that his PTSD had subsided; he was not having as many nightmares, and he was doing well overall. AR 450, 592  But after these improvements, in August 2019, Dr. Mash assessed Mr. Trujillo with moderate and marked mental limitations. AR 552–53. And other evidence in the record establishes that Mr. Trujillo continued to suffer from mental health issues after Dr. Mash filled out the MRFCA. For example, in October 2019, Mr. Trujillo reported that "he currently has flashbacks and has nightmares of different scenarios," was "depressed and struggling to leave the house," and had no energy. AR 754. Those symptoms continued and worsened through the next year. *See* AR 762. In September 2020, Mr. Trujillo still struggled with trust of others, and he admitted that he holds grudges and is often confrontational. AR 755. He continued to struggle with depression, poor sleep, and "constant negative memories and thoughts of past traumatic events." AR 760, 762. Mr. Trujillo further expressed concern that his medication was not as effective as it once was, and that his symptoms were more severe than normal. AR 760. Given

---

[12] Additionally, all the activities that the ALJ points to as being inconsistent with Dr. Mash's opinion are solitary activities that are wholly irrelevant to Dr. Mash's concern that Mr. Trujillo's hypervigilance, paranoia, and explosive rage likely would interfere this his ability to work in coordination with/or proximity to others without being distracted by them, and to accept instructions and respond appropriately to criticism from supervisors.

the ALJ's mistaken belief that Dr. Mash's opinion was from August 2018 rather than August 2019, and the evidence that Mr. Trujillo's symptoms worsened after August 2019, the ALJ's reason for finding Dr. Mash's opinion only partially persuasive is not supported by substantial evidence.

VI.   **Conclusion**

The reasons given by the ALJ finding Dr. Mash's opinion only partially persuasive are not supported by substantial evidence and are based on a mistake of fact. The Court remands this case so the ALJ may properly assess Dr. Mash's opinion. I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent